IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TREASURY MANAGEMENT<br>SERVICES, INC.<br><br>    Plaintiff,<br><br>v.<br><br>WALL STREET SYSTEMS DELAWARE,<br>INC. and IT2 TREASURY SOLUTIONS,<br>INC.<br><br>    Defendants. | Civ. No. 16-283-SLR |

**MEMORANDUM**

At Wilmington this 5th day of May, 2017, having reviewed the papers submitted in connection with defendants' motion to dismiss (D.I. 8), the court issues its decision as follows:

1. **Background.** Treasury Management Services, Inc. ("plaintiff") is a Texas corporation with a principal place of business in Houston, Texas. (D.I. 1 at ¶ 3) Plaintiff is an investment fund manager and administrator. (D.I 1, ex. C) Wall Street Systems Delaware, Inc. ("WSS") and IT2 Treasury Solutions ("IT2") (collectively, "defendants") are Delaware corporations with a principal place of business in New York City, New York. (D.I. 1 at ¶¶ 5-6) WSS develops "treasury management software systems… to help automate the administration of corporate treasury departments." (D.I. 9 at 3) IT2 is a subsidiary of WSS and develops electronic treasury management systems. (D.I. 1, ex. D & E)

2. On April 20, 2016, plaintiff filed an action against defendants, alleging that defendants: (1) infringed on a registered trademark in violation of 15 U.S.C. § 1114(1)(a); (2) falsely designated its products and services as originating from,

connected with, or endorsed by plaintiff in violation of 15 U.S.C. § 1125(a); (3) diluted its trademark in violation of 15 U.S.C. § 1125(c); (4) diluted its trademark in violation of 6 Del. C. § 3313; (5) engaged in unfair competition in violation of 6 Del. C. § 2531; and (6) infringed on its trademark and engaged in unfair competition in violation of Delaware common law. (D.I. 1) Plaintiff also seeks to recover attorneys fees. (D.I. 1 at ¶ 53) Defendants have moved to dismiss for failure to state a claim for relief under Federal Rules of Civil Procedure 12(b)(6). (D.I. 8) The court has jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338, and 1367

3. **TMS.** Plaintiff began using the mark "TMS" in January 1993. (D.I. 1 at ¶ 15) On May 30, 2006, plaintiff applied to the United States Patent and Trademark Office ("USPTO") for the trademark "TMS." USPTO TSDR Case Viewer #78896326, Document 14 "TEAS Plus New Application" (May 30, 2006). The mark was published for opposition on December 13, 2006. *Id.*, Document 11 "Notice of Publication" (Dec. 13, 2006). On May 20, 2007, "TMS" was issued on the Principal Register in international class 036 for "currency exchange and advice; electronic transfer of money; equity capital investment; financial forecasting; financial information in the nature of rates of exchange; foreign exchange information services; investment advice; investment management; monetary exchange." (D.I. 1, ex. A) The "TMS" "mark consists of standard characters without claim to any particular font, style, size, or color." (*Id.*)

4. **TMS TRADE.** Plaintiff began using the mark "TMS TRADE" in January 1993. (D.I. 1 at ¶ 15) On May 30, 2006, plaintiff applied to the USPTO for the trademark "TMS TRADE." USPTO TSDR Case Viewer #78896257, Document 16 "TEAS Plus New Application" (May 30, 2006). The mark was published for opposition on January 3, 2007. Id., Document 11 "Notice of Publication" (Jan. 3, 2007). On April 10, 2007, "TMS TRADE" was issued on the Principal Register in international class 036 for "currency

2

exchange and advice; electronic transfer of money; equity capital investment; financial forecasting; financial information in the nature of rates of exchange; foreign exchange information services; investment advice; investment management; monetary exchange." (D.I. 1, ex. B) The "TMS TRADE" "mark consists of standard characters without claim to any particular font, style, size, or color." (Id.)

**5. Plaintiff's Use.** Plaintiff has used the marks "TMS" and "TMS TRADE" (collectively, "TMS Marks") "substantially, continuously, and extensively in U.S. commerce since at least January 1993." (D.I. 1 at ¶ 15) Plaintiff uses the TMS Marks for its "on-line services, point-of-sale services and ecommerce." (Id. at ¶ 18) The TMS Marks appear prominently on plaintiff's website. (Id., ex. C) On August 23, 2013, plaintiff "filed Combined Declarations of Use and Incontestability under Sections 8 & 15" for the TMS Marks, and on September 10, 2013, the USPTO "issued Notices of Acceptance and Acknowledgement" for the TMS Marks.[1] (Id. at ¶ 16)

6. **WSS and IT2's use.** Plaintiff alleges that defendants have used and continue to use "the TMS Marks in connection with their financial, investment, and monetary services." (D.I. 1 at ¶ 19) The WSS website describes "The IT2 TMS" which is a "Fully Integrated TMS." (D.I. 1, ex. D at 2) The IT2 website (http://www.it2tms.com) states that "IT2 has been at the forefront of the development of the Treasury Management System (TMS) since the beginning" and employs the "TMS" acronym extensively. (D.I. 1, ex. E at 2) According to plaintiff, as early as October 2014, "[d]efendants had knowledge of the TMS Marks" and, despite this knowledge, they continued "to willfully infringe on the TMS Marks." (Id. at ¶¶ 20-21) Plaintiff alleges that defendants "allow[] . . . customers and clients to log-into [their] system and use [their] **financial services** related to the infringing TMS Marks regardless of the customer or client's location." (Id.

---

[1] The TMS Marks, therefore, are incontestable under 15 U.S.C. § 1065.

3

at ¶ 22 (emphasis added)) Further, plaintiff contends that "customers or clients of [d]efendants have utilized [d]efendants' **financial services** related to the infringing TMS Marks." (*Id.* at ¶ 23 (emphasis added))

**7. Standard of Review.** A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a three-part analysis when reviewing a Rule 12(b)(6) motion. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d. Cir. 2016). In the first step, the court "must tak[e] note of the elements a plaintiff must plead to state a claim." Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Lastly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (citations omitted).

8. Under *Twombly* and *Iqbal*, the complaint must sufficiently show that the pleader has a plausible claim. *McDermott v. Clondalkin Grp.*, 2016 WL 2893844, at *3 (3d Cir. May 18, 2016). Although "an exposition of [the] legal argument" is unnecessary, *Skinner v. Switzer*, 562 U.S. 521 (2011), a complaint should provide reasonable notice under the circumstances. *Id.* at 530. A filed pleading must be "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," such that "the factual contents have evidentiary support, or if so identified, will likely have evidentiary support after a reasonable

4

opportunity for further investigation or discovery." *Anderson v. Bd. of Sch. Directors of Millcreek Twp. Sch. Dist.*, 574 F. App'x 169, 174 (3d Cir. 2014) (quoting Fed. R. Civ. P. 11(b)). So long as plaintiffs do not use "boilerplate and conclusory allegations" and "accompany their legal theory with factual allegations that make their theoretically viable claim plausible," the Third Circuit has held "pleading upon information and belief [to be] permissible where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *McDermott*, 2016 WL 2893844, at *4 (quotation marks, citation, and emphasis omitted).

9. As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

10. **Lanham Act, § 32.** Plaintiff alleges trademark infringement under 15 U.S.C. § 1114(1)(a). (D.I. 1 at ¶¶ 24-28) In order to establish federal trademark infringement, a plaintiff must demonstrate that: (1) the mark is valid and legally protectable; (2) plaintiff owns the mark; and (3) the defendant's use of its mark to identify goods or services is likely to create confusion concerning the origin of the goods or services. *Checkpoint Sys. v. Check Point Software Tech.*, 269 F.3d 270, 279 (3d Cir. 2001). "If the mark at issue [i]s federally registered and ha[s] become incontestable, . . . validity, legal protectability, and ownership are proved." *Ford Motor Co. v. Summit Motor Prod.*,

5

*Inc.*, 930 F.2d 277, 291 (3d Cir. 1991) (citation omitted). A mark is incontestable if it has been "in continuous use for five years subsequent to the date of... registration and is still in use in commerce." 15 U.S.C. § 1065. "Where a mark has not been federally registered or has not achieved incontestability, validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive." *Ford Motor*, 930 F.2d at 291. To determine likelihood of confusion, courts in the Third Circuit employ "the Lapp factors."[2] However, "[i]f products are directly competing, and the marks are clearly very similar, a district judge should feel free to consider only the similarity of the marks themselves." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 214 (3d Cir. 2000).

11. The TMS Marks are incontestable, therefore, plaintiff has alleged facts sufficient to support validity, protectability, and ownership. *Ford Motor*, 930 F.2d at 291. As to likelihood of confusion, plaintiff alleges that:

> Defendants' use of the TMS Marks in marketing, promotion, retail software sales, and financial services in the financial services industry is likely to cause confusion, mistake, or deception as to the source, affiliation, sponsorship, or authenticity of defendants' services. As a result of defendants' unauthorized use of trademarks that are confusingly similar to plaintiff's federally registered marks, the public is likely to believe that plaintiff is affiliated with defendants.

(D.I. 1 at ¶ 25) In support, plaintiff contends that "defendants' website allows its customers and clients to log-in to defendants' system and use defendants' financial services related to the infringing TMS Marks regardless of the customer or client's location." (D.I. 1 at ¶ 22) The TMS Marks relate to services, and plaintiff has pled that defendants offer access to their "TMS" products as a service on a website. These facts

---

[2] *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).

6

are sufficient to support a likelihood of confusion as to services related to the TMS Marks. Therefore, defendants' motion is denied with respect to count I.[3]

12. **Lanham Act, § 43(a).** Plaintiff alleges that defendants' "use of the TMS Marks constitutes a false designation of origin, or a false representation or of false advertising" under § 43(a) of the Lanham Act. (D.I. 1 at ¶¶ 29-33) Third Circuit courts "measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards." *A&H Sportswear, Inc.,* 237 F.3d at 210. Therefore, for the reasons cited above with respect to plaintiff's § 32 claims, defendants' motion as to the § 43(a) claims is denied.[4]

13. **Lanham Act, § 43(c) dilution.** Plaintiff contends that defendants' actions constitutes trademark dilution under § 43(c) of the Lanham Act. The relevant statute provides injunctive relief to "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness." U.S.C. § 1125(c)(1). In order to establish a federal dilution claim, a plaintiff must show:

(1) the plaintiff is the owner of a mark that qualifies as a 'famous' mark in light of the totality of the four factors listed in § 1125(c)(2)(a);

(2) the defendant is making commercial use in interstate commerce of a mark or trade name;

(3) defendant's use began after the plaintiff's mark became famous; and

(4) defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services.

---

[3] Defendants admit that IT2 uses the acronym "TMS" "to identify IT2's product as a treasury management system," and present several defenses. Defendants argue that their use is not a "use in commerce" or as a mark. (D.I. 9 at 4-8) In the alternative, defendants aver that their use is descriptive fair use under 15 U.S.C. § 1115(b)(4). (D.I. 9 at 8-9) These are inherently factual questions best resolved at a later stage in the proceedings.

[4] Defendants argue that they "do not use 'TMS' to identify the origin of their products, but only describe the general class of goods." (D.I. 9 at 11) The source of plaintiff's claim is defendants' use of the TMS Marks with respect to services. (D.I. 1 at ¶¶ 22-23)

*Lingo v. Lingo*, 785 F. Supp. 2d 443, 455 (D. Del. 2011) (citing *Times Mirror Magazines, Inc. v. Las Vegas Sports News*, 212 F.3d 157, 163 (3d Cir.2000)). According to the statute:

> [A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:
>
> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A). Defendants argue that "plaintiff has alleged no facts to support the conclusory allegation that the TMS Marks have become famous." (D.I. 9 at 11) Plaintiff contends that "[t]he TMS Marks are registered and have become famous and distinctive in the United States through its extensive, continuous and exclusive use in connection with Plaintiff's products." (D.I. 1 at ¶ 35; D.I. 12 at 9) Viewing the complaint in the light most favorable to plaintiff, plaintiff has alleged facts related to the registration of the TMS Marks, the duration of their use, and the geographic extent of sales of services under the marks. These facts are sufficient to support the allegation that the marks are famous under the statute. Therefore, defendants' motion as to the § 43(c) claims is denied.

14. **Delaware trademark dilution.** Plaintiff alleges that defendants' acts "constitutes a dilution of the TMS Marks and injures plaintiff's business reputation" under 6 Del. C. § 3301 *et seq.* (D.I. 1 at ¶¶ 40-43) The Delaware Trademark Act ("DTA") provides:

8

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties, or the absence of confusion as to the source of goods or services.

6 Del. C § 3313. In order to prevail on a claim brought pursuant to the DTA, a plaintiff must demonstrate that there is a likelihood of dilution, not actual dilution. "Likelihood of dilution requires 'some mental association between the marks' and can be defined as a 'blurring of a mark's product identification or the tarnishment of the affirmative associations a mark has come to convey.'" *Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834, 855 (D. Del. 2006) (quoting *Barnes Grp. Inc. v. Connell Ltd. P'ship*, 793 F. Supp. 1277, 1304 (D. Del. 1992)). The TMS Marks are incontestable, and plaintiff has pled facts sufficient to support a likelihood of confusion under the Lanham Act, therefore, plaintiff has pled sufficient facts to go forward with a trademark dilution claim under Delaware law. Defendants' motion is denied with respect to Delaware trademark dilution.

15. **Delaware unfair competition.** Plaintiff alleges that defendants' acts constitute unfair competition under the Delaware deceptive trade practices act ("DDTPA"), 6 Del. C. § 2532, because, in using the TMS Marks on defendants' website, defendants "ha[ve] engaged in unfair, deceptive, and/or misleading advertising." (D.I. 1 at ¶ 45) Courts reviewing DDPTA violations apply the same standards as they apply to trademark infringement claims (i.e., valid and protectable mark, plaintiff owns mark, and likelihood of confusion). *Keurig, Inc. v. Sturm Foods, Inc.*, 2012 WL 4049799 (D. Del. 2012) (citing *Sanofi–Aventis*, 453 F.Supp.2d at 847). "[P]roof of a Lanham Act claim would necessarily meet the requirements for a claim under the DTPA." *Schering-Plough Healthcare Prod., Inc. v. Neutrogena Corp.*, 702 F. Supp. 2d 266, 272 (D. Del. 2010). Plaintiff's pleading under the Lanham Act is sufficient to support unfair

competition under the DDTPA, therefore, defendants' motion is denied with respect to unfair competition.

16. **Delaware common law claims.** Plaintiff alleges that defendants' acts constitute trademark infringement and unfair competition under Delaware common law. (D.I. 1 at ¶¶ 48-51) Defendants argue that, because "dismissal of Lanham Act claims is warranted, it is also appropriate to dismiss duplicative common law claims." (D.I. 9 at 13) As above, plaintiff has pled sufficient facts to support Lanham Act trademark infringement and unfair competition claims, therefore, the common law trademark and unfair competition claims may proceed.

17. **Conclusion.** For the reasons stated, defendants' motion to dismiss (D.I. 8) is denied. An order shall issue.

                                                        Senior United States District Judge